UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEDRO JOAQUIN AVILES-MENA,<br><br>Plaintiff,<br><br>v.<br><br>POLLY KAISER, et al.,<br><br>Defendants. | Case No.  25-cv-06783-RFL<br><br>**ORDER GRANTING *EX PARTE* TEMPORARY RESTRAINING ORDER; AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE**<br><br>Re: Dkt. No. 2 |

  Before the Court is Petitioner-Plaintiff Pedro Joaquin Aviles-Mena's *Ex Parte* Motion for Temporary Restraining Order.  (Dkt. No. 2.)  Petitioner-Plaintiff filed his Petition for Writ of Habeas Corpus and *Ex Parte* Motion for Temporary Restraining Order against Acting Field Office Director Polly Kaiser, Acting Director of Immigration and Customs Enforcement ("ICE") Todd M. Lyons, Secretary of the Department of Homeland Security ("DHS") Kristi Noem, and Attorney General Pamela Bondi.  On August 8, 2025, during a routine check-in, Petitioner-Plaintiff was detained by ICE agents.  Through counsel, he states that he was given no notice prior to his detention.

  Now, Petitioner-Plaintiff requests that this Court (1) order his immediate release from Respondents-Defendants' custody pending these proceedings, and (2) enjoin Respondents-Defendants from transferring him out of this District or deporting him during the pendency of the underlying proceedings.  For the following reasons, the motion for Temporary Restraining Order is **GRANTED**, as modified below.

I.  BACKGROUND

  According to the evidence submitted in support of his motion, Petitioner-Plaintiff arrived in the United States from Nicaragua, fleeing political persecution based on his participation in peaceful protests.  On May 23, 2022, after Petitioner-Plaintiff's arrival in the United States, ICE

granted him parole under Immigration and Nationality Act ("INA") § 212(d)(5)(A). He subsequently pursued asylum, and USCIS issued a Form I-589 receipt on May 22, 2023. Since that date, Petitioner-Plaintiff has maintained lawful presence tied to his pending asylum and work authorization, as corroborated by tax filings and other documentation attached to his petition.

On June 5, 2025, the United States Citizenship and Immigration Services ("USCIS") issued a Notice of Dismissal of Form I-589, the application used to apply for asylum, stating that DHS had placed him in expedited removal proceedings. As a result, a Form I-860—also known as a Notice and Order of Expedited Removal—was issued. The USCIS letter stated that although the asylum office would not process Petitioner-Plaintiff's Form I-589 at that time, his claim for fear would still be considered by an asylum officer through the credible fear screening process.

On August 8, 2025, Petitioner-Plaintiff arrived at his routine ICE check-in appointment. On that date, he was taken into custody for expedited removal processing.

On August 11, 2025, this Petition was filed. As of the date of that filing, Petitioner-Plaintiff states through counsel that he remains in custody and no credible fear interview has been scheduled. Petitioner-Plaintiff contends that his arrest and detention violate the Due Process Clause of the Fifth Amendment, both substantively (because Respondents-Defendants allegedly have no valid interest in detaining him based on either risk of flight or danger to the community) and procedurally (because he was not provided with a pre-detention bond hearing).

## II.     LEGAL STANDARD

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially identical." (internal quotation marks and citation omitted)). A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips

in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. A "TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

### III.   DISCUSSION

As a preliminary matter, the Court finds that the requirements for issuing a temporary restraining order without notice set out in Federal Rule of Civil Procedure 65(b)(1) are met in this case. Petitioner-Plaintiff's counsel has set out specific facts in a declaration showing that immediate and irreparable injury, loss, or damage may result before the adverse party can be heard in opposition. *See* Fed. R. Civ. Pro. 65(b)(1)(A). Additionally, counsel states that he spoke with an Assistant United States Attorney at the U.S. Attorney's Office for the Northern District of California, and provided a copy of Petitioner-Plaintiff's habeas petition and Notice of Motion for *Ex Parte* Temporary Restraining Order by email. (*See* Dkt. No. 3 ("Ramos Decl.") ¶ 10.) *See also* Fed. R. Civ. P. 65(b)(1)(B).

The Court finds that Petitioner-Plaintiff has shown at least that there are "serious questions going to the merits" and that "the balance of hardships tips sharply" in her favor. *Weber*, 767 F.3d at 942. Under the Due Process Clause of the Fifth Amendment to the United

States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).  Courts have previously found that individuals released from immigration custody on bond have a protectable liberty interest in remaining out of custody on bond.  *See Ortiz Vargas v. Jennings*, No. 20-cv5785, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does Ortega have a liberty interest in remaining out of custody on bond."); *Romero v. Kaiser*, No. 22-cv-02508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022) ("[T]his Court joins other courts of this district facing facts similar to the present case and finds Petitioner raised serious questions going to the merits of his claim that due process requires a hearing before an IJ prior to re-detention."); *Garcia v. Bondi*, No. 3:25-cv-05070, 2025 WL 1676855, at *3 (N.D. Cal. June 14, 2025) (same); *Pablo Sequen v. Kaiser*, No. 25-cv-06487-PCP, 2025 WL 2203419, at *2 (N.D. Cal. Aug. 1, 2025) (collecting cases); *Jorge M. F. v. Wilkinson*, No. 21-cv-01434, 2021 WL 783561, at *2 (N.D. Cal. Mar. 1, 2021).

For similar reasons as those discussed in the aforementioned cases, this Court finds that the three factors relevant to the due process inquiry set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976)—"the private interest that will be affected by the official action," "the risk of an erroneous deprivation . . . and the probable value, if any, of additional or substitute procedural safeguards," and "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail," *id.* at 335—require that Petitioner-Plaintiff be immediately released from custody, and that he be given notice and a pre-detention hearing before a neutral decisionmaker prior to being taken back into custody.

Petitioner-Plaintiff has a substantial private interest in remaining out of custody.  *See*

*Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).  Even if Petitioner receives a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and is released at that point, he will continue to suffer the harm that is the subject of his motion:  that is, his potentially erroneous ongoing detention.  *See Jorge M.F. v. Jennings*, 534 F. Supp. 3d 1050, 1055 (N.D. Cal. 2021) (requiring a pre-deprivation hearing and noting that respondents "misapprehend[ed] the purpose of a pre-detention hearing: if Petitioner is detained, he will already have suffered the injury he is now seeking to avoid").

There is also a risk of erroneous deprivation that the additional procedural safeguard of a pre-detention hearing would help protect against.  Civil immigration detention must be "nonpunitive in purpose" and bear a "reasonable relation" to the authorized statutory purposes of preventing flight and danger to the community.  *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S. Ct. 2491, 2499 (2001).  ICE identified no basis under those statutory purposes for re-arresting him.  In these circumstances, the risk of erroneous deprivation appears high.

And, like other Courts in this district, the Court concludes that the government's interest in re-detaining Petitioner-Plaintiff without a hearing is "low," particularly in light of the fact that Petitioner-Plaintiff has maintained lawful presence.  *See Jorge M.F.*, 2021 WL 783561, at *3; *Ortega*, 415 F. Supp. 3d at 970.

Petitioner-Plaintiff has also demonstrated a likelihood of irreparable injury in the absence of temporary relief.  The likely unconstitutional deprivation of liberty that Petitioner-Plaintiff faces is an immediate and irreparable harm.  "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).  "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."  *Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) (cleaned up).  "[I]t follows inexorably from [the] conclusion" that Petitioner-Plaintiff's detention without a pre-detention hearing is "likely unconstitutional," that he has "also carried [his] burden as to irreparable harm."  *Hernandez*, 872 F.3d at 995.

Finally, the balance of the equities and the public interest, which merge in light of the fact that the government is the opposing party, tip sharply in Petitioner-Plaintiff's favor. "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-cv-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up); *see also Melendres*, 695 F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights." (quotation omitted)); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). As other courts in this district and others have concluded under similar circumstances, "the potential harm to [Petitioner-Plaintiff] is significant, while the potential harm to the government is minimal." *Pablo Sequen*, 2025 WL 2203419, at *3. At most, the government faces a short delay in detaining Petitioner-Plaintiff if it ultimately demonstrates, by clear and convincing evidence, that his detention is necessary to prevent danger to the community or flight. *See Jorge M. F.*, 2021 WL 783561, at *3; *Diaz v. Kaiser*, No. 25-cv-05071, 2025 WL 1676854-BLF (N.D. Cal. June 14, 2025). The government is not "harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983). "Faced with . . . a conflict between minimally costly procedures and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in plaintiffs' favor." *Singh v. Andrews*, No. 25-cv-00801, 2025 WL 1918679, at *9 (E.D. Cal. July 11, 2025) (quoting *Hernandez*, 872 F.3d at 996) (cleaned up).

A TRO immediately releasing Petitioner-Plaintiff is appropriate here to return him to the status quo. *E. Bay Sanctuary Covenant*, 932 F.3d at 779. The status quo refers to "the last uncontested status which preceded the pending controversy." *Doe v. Noem*, No. 25-cv-00633, 2025 WL 1141279, at *9 (W.D. Wash. Apr. 17, 2025) (citing *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)). That is the moment prior to his likely illegal

6

detention. *See Kuzmenko v. Phillips*, No. 25-cv-00663, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025) (granting a temporary restraining order requiring immediate release of the petitioner back to home confinement from custody, as a restoration of the status quo).[1]

Because Petitioner-Plaintiff satisfies all requirements for temporary injunctive relief and such relief is necessary to restore the status quo, the TRO Motion is granted as detailed below. This Order accords with many other recent grants of temporary relief in similar circumstances. *See, e.g., Garro Pinchi v. Noem*, No. 25-cv-05632, 2025 WL 1853763, at *4 (N.D. Cal. July 4, 2025) (granting temporary restraining order requiring release of asylum seeker and a pre-detention bond hearing before re-arrest), converted to preliminary injunction at __ F. Supp. 3d __, 2025 WL 2084921 (N.D. Cal. July 24, 2025); *Singh*, 2025 WL 1918679, at *10 (granting preliminary injunction); *Doe v. Becerra*, No. 25-cv-00647, 2025 WL 691664, at *8 (E.D. Cal. Mar. 3, 2025) (granting temporary restraining order); *see also Diaz*, 2025 WL 1676854 (granting temporary restraining order requiring pre-detention hearing before re-detention of noncitizen out of custody five years); *Garcia*, 2025 WL 1676855, at *3 (granting temporary restraining order requiring pre-detention hearing before re-detention of noncitizen out of custody six years); *Enamorado v. Kaiser*, No. 25-cv-04072-NW, 2025 WL 1382859, at *3 (N.D. Cal. May 12, 2025).

Because "there is no realistic likelihood of harm to the [Respondents-Defendants] from enjoining [their] conduct," *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003), no security is needed to ensure that Respondents-Defendants will be reimbursed for "costs and damages sustained by . . . hav[ing] been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court exercises its discretion under Rule 65(c) to dispense with the filing of bond. *Jorgensen*, 320 F.3d at 919.

---

[1] Because Petitioner-Plaintiff's release simply returns him to the status quo, it is not a mandatory injunction, which is subject to a higher standard. In any event, even if Petitioner-Plaintiff's release were understood to be a mandatory injunction, that standard would be met. "First, unlawful detention certainly constitutes 'extreme or very serious' damage, and that damage is not compensable in damages." *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017). And second, as detailed above, the merits of the case are not "doubtful." *Id.*

## IV.     ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED** that Petitioner-Plaintiff's *Ex Parte* Motion for Temporary Restraining Order is **GRANTED** to preserve the status quo pending further briefing and a hearing on this matter.  Respondents-Defendants are **ORDERED** to immediately release Petitioner-Plaintiff from Respondents-Defendants' custody and are **ENJOINED AND RESTRAINED** from re-detaining Petitioner-Plaintiff without notice and a pre-deprivation hearing before a neutral decisionmaker, and from removing him from the United States.[2]  This Order shall remain in effect until **Tuesday, August 26, 2025, at 5:00 p.m.**

The Petition for Writ of Habeas Corpus, Motion for Temporary Restraining Order, and this Order **SHALL** be served on Respondents-Defendants such that they receive actual notice as soon as practicable, and Petitioner-Plaintiff shall file proof of such service by no later than **Wednesday, August 13, 2025**.  Respondents-Defendants shall provide a status report confirming Petitioner-Plaintiff's release by **Wednesday, August 13, 2025**.

Respondents-Defendants are **ORDERED TO SHOW CAUSE** in-person at a hearing in Courtroom 15 at the San Francisco Courthouse on **Thursday, August 21, 2025, at 1:00 p.m.** why a preliminary injunction should not issue.  Respondents-Defendants shall file a response to Petitioner-Plaintiff's motion by no later than **Friday, August 15, 2025**. Any reply shall be filed by **Tuesday, August 19, 2025**.

**IT IS SO ORDERED.**

Dated: August 12, 2025 at 1:00 p.m.

RITA F. LIN
United States District Judge

---

[2] Petitioner-Plaintiff also asks the Court to order that he remain within the Northern District of California in order to preserve this Court's jurisdiction, but it is well-established that "when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release."  *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004).