UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEDRO JOAQUIN AVILES-MENA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>POLLY KAISER, et al.,<br><br>　　　　　Defendants. | Case No. 25-cv-06783-RFL<br><br>**ORDER GRANTING PRELIMINARY INJUNCTION**<br><br>Re: Dkt. Nos. 2, 9 |

**I.     INTRODUCTION**

Petitioner-Plaintiff Pedro Aviles-Mena, a citizen of Nicaragua, was arrested by Border Patrol near the U.S.-Mexico border in May of 2022. After a brief detention during which he expressed a fear of returning to Nicaragua, he was released on parole. He has been lawfully living and working in the United States since that time, and has applied for asylum with U.S. Citizenship and Immigration Services ("USCIS"). On August 8, 2025, Aviles-Mena was re-arrested at a scheduled Immigration and Customs Enforcement ("ICE") check-in, based on what the ICE agent's report describes as a "previously served [] Notice and Order of Expedited Removal." He filed a petition for habeas corpus ("Petition"), and on August 12, 2025, this Court issued a temporary restraining order requiring the government to release him and enjoining it from re-detaining him without notice and a pre-arrest hearing before a neutral decisionmaker. Before the Court is Aviles-Mena's request to convert the temporary restraining order into a preliminary injunction. Because Aviles-Mena has raised a serious question going to the merits of his procedural due process claim, has shown a likelihood of irreparable harm, and has shown that the balance of equities tips sharply in his favor, the preliminary injunction is **GRANTED**.

## II.    BACKGROUND

According to the evidence submitted by the parties, Aviles-Mena is a citizen of Nicaragua, and arrived in the United States after fleeing political persecution related to his participation in peaceful protests.  Aviles-Mena was encountered by Border Patrol on May 16, 2022, near El Paso, Texas.  (Dkt. No. 11-1 at 4.)[1]  On May 17, 2022, the Department of Homeland Security ("DHS") made the determination pursuant to 8 U.S.C. 1225(b)(1), that Aviles-Mena was inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I), and subject to removal.  (*Id.* at 8.)  DHS records indicate that Aviles-Mena stated a fear of returning to Nicaragua and "was processed as an Expedited Removal with Credible Fear."  (*Id.* at 6.)  Aviles-Mena was issued a Form I-860 with: (i) a "Determination of Inadmissibility," dated May 17, 2022, and signed by a Border Patrol agent, and (ii) an "Order of Removal," which is unsigned.  (*Id.* at 8.)  Counsel for the government conceded at oral argument that Aviles-Mena has not yet been ordered removed, via a final order of removal, because he has not received a credible fear interview.

On May 23, 2022, ICE granted Aviles-Mena a one-year parole under 8 U.S.C. § 1182(d)(5)(A).  (Dkt. No. 3-1 at 5.)  His case was referred to USCIS asylum officers for a credible fear interview, but the interview has not been scheduled to date.  (Dkt. No. 11-1 at 13.)  He filed an application for asylum with USCIS, and was issued a Form I-589 receipt on May 22, 2023.  (Dkt. No. 3-1 at 8.)  Aviles-Mena was granted work authorization and has been continually present in the United States since his release on parole.  (*Id.* at 9–13; Dkt. No. 3 ¶ 7.)  Counsel for the government represented that Aviles-Mena's 2022–2023 parole was not renewed, which means that it expired automatically according to its terms.  (Dkt. No. 3-1 at 5.)  Aviles-Mena did not submit any evidence of a parole renewal.

On June 5, 2025, USCIS issued a Notice of Dismissal of Form I-589, the application used to apply for asylum, stating that the asylum office would not process Aviles-Mena's application because he had been issued a "Notice and Order of Expedited Removal."  (Dkt. No. 3-1 at 2.)

---

[1] All citations to page numbers refer to ECF pagination.

He was informed that his claim of fear would nonetheless be considered by an asylum officer through the credible fear screening process outlined in 8 C.F.R. § 208.30.  (*Id.*)

On August 8, 2025, Aviles-Mena arrived at a routine ICE check-in appointment.  (Dkt. 11-1 at 12.)  The narrative report from the ICE agent states that Aviles-Mena was then taken into custody pursuant to the "previously served [] Notice and Order of Expedited Removal."  (*Id.*)  On August 11, 2025, this Petition was filed.  (Dkt. No. 1.)  Aviles-Mena contends that his arrest and detention violate the Due Process Clause of the Fifth Amendment, both substantively (because the government allegedly has no valid interest in detaining him) and procedurally (because he was not given a pre-detention custody redetermination hearing).  On August 12, 2025, the Court issued a temporary restraining order.  (Dkt. No. 9, ("TRO").)  Respondents-Defendants were ordered to immediately release Aviles-Mena from ICE custody and were enjoined and restrained from re-detaining Aviles-Mena without notice and a pre-deprivation hearing before a neutral decisionmaker, and from removing him from the United States until August 26, 2025.  (*Id.*)  The order was then extended, for good cause, until September 9, 2025.  (Dkt. No. 14.)

At oral argument on this Motion, Counsel for the government represented that, upon releasing Aviles-Mena pursuant to the TRO, Aviles-Mena was issued a new parole notice and was re-paroled under section 1182(d)(5)(A), for a one-year period.  Counsel for the government confirmed that ICE's determination to parole Aviles-Mena was voluntary, pursuant to its statutory and regulatory authority, and that ICE did not believe that re-parole was required by the TRO.  However, it is the government's position that ICE may terminate Aviles-Mena's parole at any time—without advance notice, at its sole discretion, and regardless of whether there have been changed circumstances since it made the parole determination—and that absent the TRO it remains free to detain Aviles-Mena and deport him on an expedited basis, subject to the results of his credible fear interview.

## III.     LEGAL STANDARD

A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

## IV.     DISCUSSION

Aviles-Mena has shown that, at minimum, there are "serious questions going to the merits" of his procedural due process claim,[2] that he is likely to suffer irreparable harm absent preliminary injunctive relief, and that "the balance of hardships tips sharply" in his favor. *Weber*, 767 F.3d at 942.

### A.     Aviles-Mena Has Raised a Serious Question Going to the Merits of His Claim

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). "Even

---

[2] Because the serious questions prong is satisfied as to Aviles-Mena's procedural due process claim, the Court does not reach the likelihood of success as to the substantive due process claim. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1139 (9th Cir. 2011) (declining to reach remaining claims after finding a serious question going to the merits of one claim).

individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, No. 25-cv-05632-PCP, 2025 WL 2084921, at *3 (N.D. Cal. July 24, 2025) (citations omitted); *Castellon v. Kaiser*, No. 25-cv-00968, 2025 WL 2373425, at *8–9 (E.D. Cal. Aug. 14, 2025) (finding a likelihood of success on the merits as to ICE parolee's liberty interest, and explaining that "parole allowed her to build a life outside detention, albeit under the terms of her parole"); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("The fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest."); *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017) (holding that re-detention after pre-parole conditional supervision requires a pre-deprivation hearing); *Romero v. Kaiser*, No. 22-cv-02508-TSH, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022) ("[T]his Court joins other courts of this district facing facts similar to the present case and finds Petitioner raised serious questions going to the merits of his claim that due process requires a hearing before an IJ prior to re-detention.").

### 1. Aviles-Mena Has a Liberty Interest in His Freedom from Detention

When analyzing whether there has been a due process injury of a protectable liberty interest, courts generally apply the factors set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976): "the private interest that will be affected by the official action," "the risk of an erroneous deprivation . . . and probable value, if any, of additional or substitute procedural safeguards," and "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.  As a threshold matter, the government argues that the *Mathews* test is inapplicable because Aviles-Mena is subject to expedited removal under 8 U.S.C. 1225(b)(1), and therefore has "only those rights regarding admission that Congress has provided by statute."  (Dkt. No. 11 at 12–13 (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020).)[3]

---

[3] The government's alternate position that *Mathews* should not apply to any "constitutional challenge to immigration detention" is unsupported.  The Supreme Court, the Ninth Circuit, and

The analysis described in *Thuraissigiam* is inapplicable here for several reasons. First, Aviles-Mena's habeas petition challenges his detention, not his "admission." *See Thuraissigiam*, 591 U.S. at 118 (explaining that "respondent fail[ed] to seek release" or dispute the validity of his confinement); *see also Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1171–72 (W.D. Wash. 2023) (finding *Thuraissigiam* inapplicable to the question of whether plaintiffs were entitled to bond hearings because *Thuraissigiam* considered only "whether a noncitizen applicant for admission has any 'rights regarding admission'") (quoting *Thuraissigiam*, 591 U.S. at 140). Second, *Thuraissigiam* involved an as-applied challenge to the expedited review process, brought by an individual who was apprehended 25 yards from the border and then was subject to continuous detention. *Thuraissigiam*, 591 U.S. at 119. Aviles-Mena, on the other hand, has been paroled into the United States and has been lawfully residing and working in the United States for three years. Therefore, Aviles-Mena is not a noncitizen "in [Thuraissigiam's] position [who] has only those rights regarding admission that Congress has provided by statute." *Id.* at 140; *see also*, *e.g.*, *Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903) (noncitizen who entered country in violation of law cannot be "deprived of [her] liberty" without receiving "due process of law"). After all, it is a "well established" rule "that the Fifth Amendment entitles aliens to due process of law." *Trump v. J. G. G.*, 145 S. Ct. 1003, 1006 (2025).

Second, and crucially, Aviles-Mena is not subject to expedited removal under the plain meaning of the statute. The government argues that under section 1225(b)(1), Aviles-Mena is subject to expedited removal as one who "has not been admitted or *paroled* into the United States," among other requirements. (Dkt. No. 11 at 10 (citing 8 U.S.C. § 1225(b)(1)(A)(iii)(II)) (emphasis added).) Yet, the government also concedes that Aviles-Mena was paroled out of ICE custody on May 23, 2022. (*Id.* at 11.) The Court concurs with other courts that have found that

---

its sister circuits have consistently applied the *Mathews* test to non-citizens' due process challenges, where the non-citizen has entered and been residing in the United States. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022) (collecting cases).

section 1225(b)(1) "does not authorize designation for expedited removal of any noncitizen who has, at any point in time, been paroled into the United States." *See Coal. for Humane Immigrant Rts. v. Noem*, No. 25-cv-872, 2025 WL 2192986, at *21–27 (D.D.C. Aug. 1, 2025) ("*Coalition*"); *see also Castellon*, 2025 WL 2373425, at *9.[4]  Nor does the routine termination of parole permit noncitizens to be subject to expedited removal again. *Coalition*, 2025 WL 2192986, at *23. All parole will eventually be terminated or expire. *Id.* However, termination of parole does not generally require treating noncitizens as if they had never been paroled in the first place. *See id.* (explaining that when a noncitizen's parole terminates, they are still treated as having been paroled when applying for adjustment of status, pursuant to 8 C.F.R. § 245.1(b)(3)). Thus, under the plain meaning of section 1225(b)(1), Aviles-Mena no longer qualifies for expedited removal because he was "paroled" into the United States and has been living and working in the United States for three years.

In briefing and at oral argument, the government took the position that parole under section 1182(d)(5)(A), pursuant to which Aviles-Mena was released, is not within the meaning of "paroled into the United States" as used in section 1225(b)(1). Any analysis of statutory meaning begins with the text. *Friends of Animals v. U.S. Fish & Wildlife Serv.*, 879 F.3d 1000, 1003 (9th Cir. 2018) (quotation omitted). The paperwork Aviles-Mena was provided by ICE described his release as "parole," and the statute cited, section 1182(d)(5)(A), likewise describes ICE's authority to "parole into the United States." The government offers no explanation for why the plain meaning of the term "parole" in section 1225(b)(1) would not cover "parole" under section 1182(d)(5)(A).

The government then advances an alternative, but related, argument that the term "parole" in section 1225(b)(1) does not include parole of those being processed "for expedited

---

[4] At oral argument, government counsel asserted that the *Coalition* opinion was distinguishable because those individuals were detained under 8 U.S.C. § 1226. While *Coalition* does not specify the basis for the initial detention of the individuals at issue, its analysis addresses parole under 8 U.S.C. § 1182(d)(5)(A), the same statutory authority pursuant to which Aviles-Mena was released. *Coalition*, 2025 WL 2192986, at *7–8.

7

removal." (Dkt. No. 11 at 12.) Instead, according to the government at oral argument, that term refers only to "conditional parole" of those who have been arrested in the country under 8 U.S.C. § 1226. The government offers no textual basis for that distinction either. That should end the analysis. In any event, the government's proposed interpretation flies in the face of the statutory scheme. Section 1225 addresses the detention and removal of "inadmissible arriving" non-citizens, and section 1225(b)(1) discusses their "parole[] into the United States." That appears to reference section 1182(d)(5)(A)'s authorization to "parole into the United States" certain non-citizens "applying for admission." By contrast, "conditional parole" under section 1226(a) refers to those released after an arrest *inside* the United States "[o]n a warrant issued by the Attorney General." *Id.* § 1226(a). It would seem particularly bizarre to interpret "parole into the United States" to refer to those arrested *inside* the United States, but not those seeking admission *into* the United States at the border.

Finally, at oral argument, the government took the position that the interpretation of "paroled into the United States" described in *Coalition* would "eviscerate" section 1225, because the government would no longer be able to remove an individual on an expedited basis once they had been paroled. To the contrary, Congress's scheme allows eligible individuals who are apprehended and detained under section 1225(b)(1) to remain subject to expedited removal under the statute, so long as they are not released from custody. But when ICE affirmatively chooses to release an individual on parole, it has made the determination that it no longer intends to fast-track their removal and that it will proceed with the standard removal process under 8 U.S.C. § 1229a. *See* 8 U.S.C. § 1225(b)(2).

In sum, because Aviles-Mena was "paroled into the United States," he cannot be subject to expedited removal under section 1225(b)(1) and has a protectable liberty interest that must be analyzed under *Mathews.*

### 2. Under the *Mathews* factors, Aviles-Mena Has Raised a Serious Question as to His Procedural Due Process Claim

This order therefore proceeds to analyze each of the three *Mathews* factors. First, Aviles-

Mena has a substantial private interest in remaining out of custody once he has been granted parole and has spent a significant time lawfully and freely residing in the United States. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *Pinchi v. Noem*, 2025 WL 2084921, at *3. Even if the Court accepts the government's position that Aviles-Mena is subject to detention under 8 U.S.C. § 1225(b)(2), (Dkt. No. 11 at 10), the "mandatory" nature of that detention is qualified by the statutory authorization to parole individuals where ICE finds an "urgent humanitarian reason[] or a significant public benefit." 8 U.S.C. § 1182(d)(5)(A). In the case of Aviles-Mena, the availability of parole as an alternative to mandatory detention is not hypothetical: ICE made the determination that he was eligible to be released on parole, and because of that decision he has spent three years openly living in the United States, with work authorization and subject to regular ICE check-ins. There is also no evidence in the record of any change in circumstance that would lead ICE to reach a different determination if they re-assessed Aviles-Mena's eligibility for parole today. In fact, ICE voluntarily re-paroled Aviles-Mena on or around August 13, 2025, implicitly conceding that no changed circumstances exist. Therefore, Aviles-Mena's private interests in his continued freedom from detention are weighty. *See*, *e.g.*, *Castellon*, 2025 WL 2373425, at *8–9.

There is also a significant risk of erroneous deprivation that the additional procedural safeguard of a pre-detention custody redetermination hearing would help protect against. Civil immigration detention must be "nonpunitive in purpose" and bear a "reasonable relation" to the authorized statutory purposes of preventing flight and danger to the community. *Zadvydas*, 533 U.S. at 690. As such, ICE's original decision to release Aviles-Mena on parole in 2022 was required by regulation to be premised on the determination that Aviles-Mena was "neither a security risk nor a risk of absconding." *See* 8 C.F.R. § 212.5(b) (humanitarian or public interest parole may not be granted if non-citizen presents a security risk nor a risk of absconding). By recently re-paroling Aviles-Mena, ICE has yet again determined that he poses neither a security nor a flight risk. Therefore, while it may be the case that the government was entitled to presume that Aviles-Mena was a flight risk when he was initially detained pursuant to section 1225(b)(1),

9

it is no longer entitled to that presumption three years later, after Aviles-Mena has been openly living in the United States for three years, and where nothing in the record indicates that he is a flight and danger to the community. Absent due process, there is a high risk that Aviles-Mena's re-detention will not be pursuant to a valid state interest.[5] In sum, ICE has not identified any basis under its statutory purposes for re-arresting Aviles-Mena after it had made the determination to grant him parole, other than its incorrect assumption that Aviles-Mena was subject to expedited removal. In these circumstances, the risk of erroneous deprivation is high.

Finally, like other courts in this district, the Court concludes that the government's interest in re-detaining Aviles-Mena without a hearing is low, because ICE previously made the determination to release him, and there is no evidence in the record of any changed circumstances that might cause ICE to reconsider its parole determination. *See Jorge M. F. v. Wilkinson*, No. 21-cv-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021); *Ortega*, 415 F. Supp. 3d at 970.

In sum, under the *Mathews* factors, Aviles-Mena has raised a serious question going to the merits of his procedural due process claim.

### B. Aviles-Mena is Likely to Suffer Irreparable Harm Absent Injunctive Relief

Aviles-Mena has also demonstrated a likelihood of irreparable injury in the absence of preliminary injunctive relief. The likely unconstitutional deprivation of liberty that Aviles-Mena faces is an immediate and irreparable harm. Although Aviles-Mena is currently paroled, it is the government's position that ICE may terminate Aviles-Mena's parole at any time, without advance notice, at its sole discretion, regardless of whether there have been changed circumstances. The government takes the further position that, absent the TRO, it remains free to subject Aviles-Mena to mandatory detention under section 1225(b)(1), a statutory scheme that

---

[5] At oral argument, the government clarified that Aviles-Mena's August 8, 2025 detention occurred after the automatic expiration of his parole. *See* 8 C.F.R. § 212.5(e)(1)(ii). This fact does not change the Court's procedural due process analysis. The automatic termination of parole does not give the government *carte blanche* to re-detain a non-citizen where no valid statutory purpose is served.

is no longer inapplicable to him, and provide him with no further process to challenge his detention. Aviles-Mena has shown a high likelihood of irreparable harm on these facts.

Furthermore, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1001–02 (9th Cir. 2012)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quotation omitted). "[I]t follows inexorably from [the] conclusion" that Aviles-Mena's detention without a pre-detention hearing is "likely unconstitutional," that he has "also carried [his] burden as to irreparable harm." *Hernandez*, 872 F.3d at 995.

### C. The Balance of Hardships Tips Sharply in Aviles-Mena's Favor

Finally, the balance of the equities and the public interest, which merge in light of the fact that the government is the opposing party, tip sharply in Aviles-Mena's favor. "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F.*, 2021 WL 783561, at *3 (cleaned up); *see also Melendres*, 695 F.3d at 1002 ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights.") (quotation omitted); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). As courts in this district and others have concluded under similar circumstances, "the potential harm to [Aviles-Mena] is significant, while the potential harm to the government is minimal." *Pablo Sequen v. Kaiser*, No. 25-cv-06487-PCP, 2025 WL 2203419, at *3 (N.D. Cal. Aug. 1, 2025).

At most, the government faces a short delay in detaining Aviles-Mena if it is ultimately determined that his detention is necessary to prevent danger to the community or flight. *See*, *e.g.*, *Jorge M. F.*, 2021 WL 783561, at *3; *Diaz v. Kaiser*, No. 25-cv-05071, 2025 WL 1676854-BLF, at *3 (N.D. Cal. June 14, 2025). "Faced with a conflict between minimally costly

procedures and preventable human suffering, the Court has little difficulty concluding that the balance of hardships tips decidedly in [Aviles-Mena's] favor." *Pablo Sequen*, 2025 WL 2203419, at *3 (quotation omitted).

Because "there is no realistic likelihood of harm to the [government] from enjoining [its] conduct," *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003), and the government has presented no specific evidence of the costs it would incur from holding a pre-deprivation hearing, no security is needed to ensure that the government will be reimbursed for "costs and damages sustained by . . . hav[ing] been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court exercises its discretion under Rule 65(c) to dispense with the filing of bond. *Jorgensen*, 320 F.3d at 919.

### D. The Scope of the Injunction

In light of the factors discussed above, the issuance of a preliminary injunction is appropriate. Aviles-Mena argues that, in addition to extending the protections already granted in the TRO, the Court should vacate USCIS's termination of his asylum application in order to return him to his pre-detention *status quo*. (Dkt. No. 17 at 3.) However, the record reflects that Aviles-Mena's asylum application was terminated more than two months prior to his detention (the subject of his habeas petition). Therefore, Aviles-Mena has failed to make the necessary showing that reinstatement of his asylum application is necessary to return him to the *status quo*.

## V. CONCLUSION

Aviles-Mena has sufficiently demonstrated serious questions going to the merits of his procedural due process claim.  The balance of hardships tips sharply in his favor, as well as the *Winter* factors of likelihood of irreparable injury and public interest.  For the foregoing reasons, **IT IS HEREBY ORDERED** that Aviles-Mena's request for a preliminary injunction is **GRANTED**.  Respondents-Defendants are **ENJOINED AND RESTRAINED** from re-detaining Aviles-Mena in any form (including, but not limited to, for purposes of executing a removal) without notice and a pre-deprivation hearing before a neutral decisionmaker.  This Order shall remain in effect until further order of the Court.

**IT IS SO ORDERED.**

Dated: September 5, 2025

RITA F. LIN
United States District Judge